IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STATE OF OHIO,                              :

        Plaintiff,                    :
                                               Case No. 3:04cv155

        vs.                           :
                                     JUDGE WALTER HERBERT RICE

JOHN DOE,                                   :

        Defendant.                    :

---

OPINION ADDRESSING DEFENDANT'S FEDERAL DEFENSES AND
ISSUE OF WHETHER DEFENDANT HAS WAIVED THE RIGHT TO RAISE
THOSE DEFENSES; CONFERENCE CALL SET

---

This case is part of an ongoing effort by the Montgomery County Prosecutor to compel Beth Lewis ("Lewis"), a former federal public defender, to provide certain information to a Montgomery County Grand Jury, which she may have learned from Jan Franks ("Franks"), a deceased client Lewis had represented while serving as a federal public defender. In particular, the Prosecutor sought to compel Lewis to disclose whether Franks had told her anything about the disappearance of one Erica Baker. In accordance with Ohio Revised Code § 2317.02, Franks' surviving spouse, Shane Franks, has twice waived the attorney-client privilege of

his deceased wife.[1]  Nevertheless, Lewis has resisted the effort of the Prosecutor, maintaining that her conversations with her deceased client are protected by the attorney-client privilege.

In June, 2002, a Montgomery County Grand Jury subpoenaed Lewis. Although she appeared before that Grand Jury, she refused to answer interrogatories it had propounded to her, citing advice of counsel and the attorney-client privilege.  On June 25, 2002, a hearing was conducted before Judge Michael Hall of the Montgomery County Common Pleas Court.  During the hearing, that judicial officer found that Franks' surviving spouse had waived her attorney-client privilege and that Lewis had refused to answer the Grand Jury's interrogatories. Judge Hall ordered Lewis to provide the answers, following which she reappeared before the Grand Jury and continued to refuse to answer the interrogatories it had propounded.  On June 26, 2002, Judge Hall conducted a second hearing, and issued a decision, in which he found that Lewis was in civil contempt of court for having refused to comply with his order.  However, he afforded Lewis the opportunity to purge herself of that contempt, by answering the Grand Jury's inquiries.  If Lewis did not answer those questions, Judge Hall ordered that she be incarcerated, until she purged herself of contempt or was otherwise released as provided by law.  During the proceeding before Judge Hall, Lewis did not raise any of the federal defenses she relies upon herein.  In other words, she did not argue that the federal attorney-client privilege, the Code of Conduct for Federal Public

---

[1]Shane Franks' initial waiver of the attorney-client privilege of his deceased spouse served as the basis for the litigation of this dispute in state court.  Thereafter, Shane Franks withdrew that waiver.  He subsequently executed a second waiver. Although Lewis has not conceded the validity of that second waiver, the Court assumes for present purposes that it is valid.

Defender Employees, the oath of office she took when she became a federal public defender, the Sixth Amendment to the United States Constitution or the Due Process Clause of the Fourteenth Amendment prevented her from being compelled to provide the requested information.

Lewis appealed Judge Hall's order, and, in accordance with the agreement of the parties, the Montgomery County Court of Appeals stayed that order. However, that judicial body ultimately concluded that the attorney-client privilege did not protect Lewis' conversations with her deceased client, Franks. See State v. Doe, 2002 WL 31105389 (Ohio App. 2002). On March 3, 2004, the Ohio Supreme Court affirmed the decision of the Montgomery County Court of Appeals. State v. Doe, 101 Ohio St.3d 170, 803 N.E.2d 777, cert. denied, — U.S. —, 125 S.Ct. 353 (2004). Lewis sought reconsideration by the Ohio Supreme Court, which denied that request on May 13, 2004. See State v. Doe, 102 Ohio St.3d 1450, 808 N.E.2d 400 (2004). It was not until Lewis sought reconsideration from the Supreme Court that she raised any of the federal defenses that are set forth above.

On March 5, 2004, after the Ohio Supreme Court had affirmed the decision of the Montgomery County Court of Appeals, an additional Grand Jury subpoena was issued to her. Once again, Lewis did not provide the requested information. On May 13, 2004, the Montgomery County Common Pleas Court scheduled a further hearing for May 17, 2004. The following day, prior to the scheduled hearing, Lewis removed the matter to this Court under 28 U.S.C. § 1441 and § 1442(a)(3). See Doc. #1.

After removal, Plaintiff State of Ohio ("Plaintiff" or "the State") filed a Motion to Remand (Doc. #6). In its Decision of January 28, 2005, this Court

overruled that motion. See Doc. #14. Therein, the Court also established a briefing schedule, directing the parties to address the viability of Lewis' federal defenses and the question of whether Ohio law prevents her from relying upon those defenses now, since she had failed to raise them in June, 2002, when she was initially subpoenaed to provide information to the Montgomery County Grand Jury. The parties have filed the requested memoranda. See Docs. ##15-17. In a telephone conference call which the Court conducted with counsel on February 14, 2005, the Court scheduled oral argument on those issues for March 2, 2005.[2] During that argument, the Court also raised the issue of whether this matter is moot. After the oral argument, the parties filed additional memoranda. See Docs. ##20 and 21. The Court now rules on the questions of whether this case is moot, whether Ohio law prevents Lewis from raising her federal defenses in this Court, by not having raised them in the state trial court, and, if not, whether one or more of those defenses prevents Lewis from being compelled to provide the requested information, addressing those questions in the above order.

I.  Mootness

The Court raised the question of whether this matter is moot, given that the Grand Jury which issued the subpoena to Lewis in March, 2004, has ceased to exist.[3] Both parties agreed that this matter is not moot, since it comes within the exception to the mootness doctrine for cases which are capable of repetition, while

---

[2]The parties agreed that an evidentiary hearing was not necessary.

[3]During the oral argument, the State acknowledged that this Grand Jury was no longer sitting.

evading review.  See e.g., American Civil Liberties Union v. Taft, 385 F.3d 641,

646 (6th Cir. 2004) (discussing that exception to the mootness doctrine).  This

Court agrees.  If it were to dismiss this case as moot, it is more certain than taxes

that the Grand Jury then sitting in Montgomery County would issue a new

subpoena to Lewis.  Therefore, it could not be questioned that this case is capable

of repetition.  Moreover, since the term of a Grand Jury under Ohio law is

presumed not to exceed four months (see Ohio R. Crim. P. 6(G)), it is quite

possible that the Grand Jury which issued that new subpoena would cease to exist

before new litigation concerning Lewis' federal defenses could be resolved.

Therefore, the Court agrees with the parties that this matter could evade review.

Accordingly, the Court concludes that this case is not moot.


II.  Failure to Raise Federal Defenses

It bears emphasis that, by exercising removal jurisdiction over this dispute,

this Court has stepped into the shoes of Judge Michael Hall, and will apply the law

of Ohio in the same manner as that judicial officer would have applied it, had Lewis

not removed this matter.  See e.g., Arizona v. Manypenny, 451 U.S. 232 (1981)

(prosecution of United States Border Patrol agent for deadly assault in violation of

an Arizona statute, removed to federal court under 28 U.S.C. § 1442(a)(1); state

law was applicable).  In other words, this Court must apply the substantive and

procedural law of Ohio,[4] just as Judge Hall would have done had this case not

been removed, rather than sitting as an appellate court reviewing the decisions the

_____

[4]Of course, the Court will also consider and, if viable, apply Lewis' federal
defenses.

Ohio courts have previously made in this matter.[5]  Additionally, this Court most decidedly has neither the authority nor the inclination to review the legislative wisdom of enacting § 2317.02 of the Ohio Revised Code, which, as interpreted by the Ohio courts, permits an individual's surviving spouse to waive her attorney-client privilege.  Finally, as previously indicated, this Court does not revisit the Ohio courts' interpretation of that statutory provision.

As is indicated, Lewis did not raise any of the federal defenses that she relies upon herein, in June, 2002, when the State initially sought to compel her to provide the requested information.[6]  Nevertheless, she argues that she was not required to raise those defenses in state court, because the uniquely federal nature of her duties of a federal public defender deprived the state courts of jurisdiction

_____

[5]For that reason, the Court previously rejected the contention of the State that the Rooker-Feldman doctrine prevented this Court from exercising subject matter jurisdiction over this case.  See Exxon Mobil Corp. v. Saudi Basic Industries, Corp., 125 S.Ct. 1517 (2005) (emphasizing that Rooker-Feldman doctrine deprives a District Court of subject matter jurisdiction, only in cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments).  As is explained above, this Court has stepped into the shoes of Judge Hall and will apply the law of Ohio in the same manner as that judicial officer, rather than being asked to review and to reject the state court decisions previously made in this dispute.

[6]When this matter was initially pending before Judge Hall, Lewis' counsel argued that the court should follow Swidler & Berlin v. United States, 524 U.S. 399 (1998), wherein the United States Supreme Court held that the federal attorney-client privilege survived the death of the client, while pointing out that Lewis had been acting in her capacity as a federal public defender when she had learned the information the State has been seeking.  See Doc. #9 at 62.  He also noted that this created a "constitutional problem," but indicated that he did not believe that the constitutional problem was "the real issue," which he defined as the meaning of the word "may" in Ohio Revised Code § 2317.02(A).  Id.  Simply stated, the Court cannot conclude that the federal defenses, which Lewis has relied upon before this Court, were raised by the statements of her counsel in that regard.

over those defenses.[7]  In support of that assertion, Lewis relies upon Kentucky v.

Long, 837 F.2d 727 (1988).  In Long, a special agent employed by the Federal

Bureau of Investigation was prosecuted in Kentucky state court for burglary.  That

prosecution was removed to federal court.  In affirming its dismissal before trial,

the Sixth Circuit held that the Supremacy Clause of the United States Constitution

mandated that the prosecution must be dismissed, given the state court's lack of

subject matter jurisdiction, absent an affirmative showing by the state that the

facts were in dispute as to whether the agent committed the crime within the

necessary and proper scope of his federal duties.  After surveying the applicable

law and noting that In re Neagle, 135 U.S. 1 (1890) is the leading case in the area,

the Long court set forth the applicable standard:

> It is by now well settled that under In re Neagle, a two-part test
> determines whether or not a state court has jurisdiction to prosecute a
> federal agent for conduct facially violative of a state's criminal code.  Under
> Neagle, a state court has no jurisdiction if (1) the federal agent was
> performing an act which he was authorized to do by the law of the United
> States and (2) in performing that authorized act, the federal agent did no
> more than what was necessary and proper for him to do.

837 F.2d at 744 (emphasis added).  The emphasized portion of the quote from the

Long decision demonstrates that the rule announced therein is not applicable in this

case, since the State has sought to compel Lewis to provide information to Grand

Juries, rather than prosecuting her for an act she was authorized by the law of the

United States to perform and doing no more than it was necessary and proper for

---

[7]Parenthetically, the argument that state courts lacked jurisdiction over Lewis' federal defenses is contrary to her previous position, given that she argued in her request for reconsideration before the Ohio Supreme Court that the federal attorney-client privilege, rather than the Ohio privilege, must be applied, since she had obtained the information in question from Franks while acting as a federal public defender.

her to do in carrying out that act.  Accordingly, the Court concludes that the principles announced in Long and similar cases did not deprive the state courts of jurisdiction over Lewis' federal defenses and that, therefore, her failure to raise those defenses at an earlier stage in this litigation is not excused.[8]  Moreover, it bears emphasis that state courts are presumed to exercise concurrent jurisdiction over federal issues with federal courts.  See e.g., Tafflin v. Levitt, 493 U.S. 455 (1990) (discussing rebuttable presumption that state and federal courts have concurrent jurisdiction over federal claims).  Lewis has not overcome that presumption.

Alternatively, Lewis argues that her federal defenses were not ripe for adjudication in June, 2002, because it was not until the Ohio Supreme Court subsequently adopted its novel and unanticipated interpretation of § 2317.02 that it became apparent that she would be required to rely upon her federal defenses.

---

[8]Lewis also relies upon Ohio v. Thomas, 173 U.S. 276 (1899), which arose out of the indictment by the State of Ohio of the director or governor of a federal soldiers' home for serving oleomargarine without posting a notice, as required by state law. Following his conviction, the defendant applied to the federal court for a writ of habeas corpus.  After such a writ had been granted and the Sixth Circuit had affirmed, the Supreme Court also concluded that Thomas was entitled to the writ, since he was not subject to the state law in question, and that the state court was without jurisdiction to subject him to the criminal proceedings, "because the act complained of was performed as part of the duty of the governor as a Federal officer in and by virtue of valid Federal authority, and in the performance of that duty he was not subject to the direction or control of the legislature of Ohio."  Id. at 284.  Given that the Supreme Court held in Thomas that Ohio courts were without jurisdiction to prosecute the director of the federal home, Lewis argues that Ohio courts were without jurisdiction to address her federal defenses. However, as this Court noted in its Decision of January 28, 2005 (Doc. #14), Lewis has been subjected to two civil contempt proceedings in state court. Therefore, since she was not subjected to a criminal prosecution, this Court cannot agree that those state courts would have lacked the jurisdiction to adjudicate those defenses.

- **8** -

Therefore, the argument continues, her failure to raise those defenses earlier does not prevent her from doing so now. This Court cannot agree.

The attorney-client privilege under Ohio law is governed by § 2317.02 of the Ohio Revised Code, which provides in pertinent part:

> The following persons shall not testify in certain respects:
> (A) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client and except that, if the client voluntarily testifies or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject.

In its decision of March 3, 2004, the Ohio Supreme Court held in ¶¶ 1 and 2 of the syllabus:

> 1. In the event of the death of a client, R.C. 2317.02(A) authorizes the surviving spouse of that client to waive the attorney-client privilege protecting communications between the deceased spouse and attorneys who had represented that deceased spouse.
>
> 2. The attorney of a deceased client may not assert attorney-client privilege to justify refusal to answer questions of a grand jury where the surviving spouse of the attorney's client has waived the privilege in conformity with R.C. 2317.02(A), and the attorney has been ordered to testify by a court.

101 Ohio St.3d 170, 803 N.E.2d 777. In the first of those two paragraphs, the Ohio Supreme Court decided that the surviving spouse of a deceased client is authorized to waive the attorney-client privilege, while the second essentially answered the question of what would happen if that privilege had been waived by the surviving spouse (i.e., does such a waiver merely permit the decedent's former attorney to testify if she chooses to do so, or can a court compel a recalcitrant attorney to testify). Lewis has not identified which paragraph of the syllabus

constituted a novel interpretation of § 2317.02(A).  However, for reasons which follow, this Court cannot agree that either constitutes such an interpretation of Ohio law.

It would be impossible to read § 2317.02(A) in a manner which did not support ¶ 1 of the syllabus, since that statute explicitly provides that the surviving spouse of a deceased client can waive her attorney-client privilege.  Indeed, the first paragraph of the syllabus in State v. Doe merely confirms that which the Ohio Supreme Court had held in Taylor v. Sheldon, 172 Ohio St. 118, 173 N.E.2d 892 (1961).  Taylor was a will contest action brought by the children of the testator's deceased son, to whom he had left nothing, against his daughters, to whom he had left his entire estate.  The major issue to be resolved in that will contest was whether the testator had lacked testamentary capacity when he had made his will. To demonstrate that he lacked such capacity, those who were challenging the will attempted to elicit testimony from Levinson, an attorney who had been called to the testator's home for the purpose of drafting a will for him.[9]  However, Levinson had left without doing so, and another attorney accomplished that task the following day.  The trial court refused to permit Levinson to testify, concluding that his testimony was precluded by the attorney-client privilege.  Upon appeal, the intermediate appellate court reversed, concluding that the trial court should have permitted Levinson to testify, since an attorney can testify about a client's mental

_____

[9]Levinson was also representing the children in the will contest.

condition if that condition would have been apparent to any observer.[10]  Upon

further appeal, the Ohio Supreme Court disagreed, holding in ¶ 4 of the syllabus:

> 4. Knowledge communicated to an attorney by his client during the attorney-client relationship, which knowledge relates to the services for which he was employed, whether it is gained from words or merely by observations made by the attorney, falls within the rule relating to privileged communications.

In ¶ 5 of the syllabus, the Ohio Supreme Court wrote:

> 5. In the absence of a waiver of the privilege by one competent to do so, as provided for in Section 2317.02, Revised Code, an attorney cannot testify as to a decedent's competency, where the attorney's opinion is based upon knowledge gained during an attorney-client relationship with the decedent and is related to the services for which he was retained to perform for the decedent.

The necessary implication of that paragraph of the syllabus in Taylor is that, if

there had been a waiver "by one competent to do so, as provided for in Section

2317.02," the attorney representing the testator could have testified.  In 1961,

when the Ohio Supreme Court decided Taylor, § 2317.02(A) provided, as it does

today, that, if a client was deceased, his attorney-client privilege could be waived

by his surviving spouse or the executor or administrator of his estate.  Thus, even

if the current version of § 2317.02(A) were ambiguous as to whether a surviving

spouse can waive the attorney-client privilege of his deceased spouse, which it

most decidedly is not, Taylor had indicated, more than 40 years before Lewis was

subpoenaed to testify about what Franks had told her, that a surviving spouse

could so act.

_____

[10]That court also concluded that an attorney-client relationship did not exist between Levinson and the testator.  The Ohio Supreme Court rejected that conclusion, and it does not bear on this Court's discussion of Taylor.

Of course, once the attorney-client privilege of a decedent, such as Franks, has been waived by her surviving spouse, the question remains whether the attorney must then testify, or does she, as Lewis argued in the Ohio courts, retain the discretion to decide whether to testify. In ¶ 2 of the syllabus, which is quoted above, the Ohio Supreme Court rejected Lewis' position that she retained the discretion to decide whether to testify about her communications with Franks. That was hardly a novel interpretation of the statute. This Court explains its conclusion in that regard by initially examining the structure of the statute, following which it turns to the rationale of the Ohio Supreme Court. However, before engaging in that analysis, it bears noting that Lewis has not cited a single decision by an Ohio court or by any other court applying Ohio law which has reached the position she has advocated, i.e., that when the attorney-client privilege has been waived, the attorney retains the discretion to decide whether to testify. Moreover, the eleven Ohio jurists who have ruled upon this matter unanimously rejected that position.

Turning to an examination of the pertinent statute, § 2317.02 prevents certain people from testifying about certain subjects ("The following persons shall not testify in certain respects"). Under subsection (A), an attorney is one of the people who is prevented from testifying, but only with respect to the client's communications in the attorney-client relationship or the attorney's advice to the client ("An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client").[11] As with most things in life, there are exceptions to the prohibition. The attorney is permitted to testify with

_____

[11]This and the following quotations in this paragraph are from § 2317.02(A).

the express consent of the client or, if she is dead, with the express consent of her surviving spouse, executor or administrator ("except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client"). In light of the structure of the statute, the phrase "except that the attorney may testify" is most reasonably understood as removing the prohibition against testifying that § 2317.02 would otherwise provide, rather than both removing that prohibition and investing discretion in the attorney to decide whether to testify. Notably, the phrase "except that the attorney may testify" applies to waivers both by the client and by her surviving spouse, executor or administrator, if the client is deceased. As a consequence, adopting Lewis' position would stand the law on its head, in that the privilege would belong to the attorney rather than to the client. For example, if a client decided that disclosure of otherwise privileged materials was to his benefit (for instance, in order to support an advice of counsel defense), neither the client nor a court could compel the attorney to disclose the materials, if she decided not to do so. Thus, a client's ability to raise an advice of counsel defense would be dependent upon whether the attorney would be willing to disclose materials that would otherwise be protected by the attorney-client privilege. Needless to say, Lewis has not cited, nor has research located, a single decision that would support that novel interpretation of the attorney-client privilege under either Ohio or federal law.[12] Therefore, the

_____

[12]Investing an attorney with the discretion to decide whether to testify or produce otherwise privileged information, after her client has waived the privilege, would also violate the universally recognized rule that the privilege belongs to the client, rather than to the attorney. See e.g., Application of Sarrio, S.A., 119 F.3d 143, 147 (2d Cir. 1997); In re Grand Jury Proceedings, 43 F.3d 966, 972 (5th Cir.

structure of § 2317.02 convinces this Court that the Ohio Supreme Court decision did not result in a novel interpretation of the attorney-client privilege under Ohio law. On the contrary, it was Lewis who advocated the novel approach to that privilege, by investing ownership of it and control over it in the attorney, rather than in the client.

To reach the conclusion contained in ¶ 2 of the syllabus, the Ohio Supreme Court had to reject Lewis' argument that the phrase "except that the attorney may testify" meant that the attorney could testify, if she chose to do so. Lewis had argued before the Ohio Supreme Court that the use of the word "may" in that phrase, rather than "shall," rendered her testimony permissive, thus vesting in her the discretion to decide whether to testify. The Ohio Supreme Court disagreed, concluding that the Ohio General Assembly had used the word "may," as opposed to "shall," in deference to the role of the trial court as the arbiter on the admission of evidence, rather than signifying that the decision on whether to testify was in the discretion of the attorney. 103 Ohio St.3d at 172-73, 803 N.E.2d at 780. Even if one could disagree with the reasoning of the Ohio Supreme Court, one could hardly call it a novel interpretation of the word "may" as used in § 2317.02(A), given that, under Ohio law, the trial court has the discretion to decide what evidence is admissible.

Accordingly, the Court disagrees with Lewis that the interpretation of § 2317.02(A) by the Ohio Supreme Court was in any sense of the word novel.

---

1994); King v. Barrett, 11 Ohio St. 261 (1860). It bears emphasis that § 2317.02(A) does not distinguish between waivers by a client, on one hand, or by an executor, administrator or surviving spouse, on the other.

Therefore, it rejects the argument that her federal defenses were not ripe in June, 2002, when the first Grand Jury subpoena was served upon her.

Merely because the Court has rejected Lewis' contention that her previous failure to raise her federal defenses does not prevent her raising them in this Court, does not mean that it has concluded that she has waived those defenses. Such a finding cannot be made without this Court's consideration of and ruling upon the Government's claims of waiver, grounded, inter alia, on a theory of collateral estoppel. Therefore, this court will assume, arguendo, that no waiver has taken place and will proceed to consider the merits of Lewis' federal defenses, a process which the undersigned believes will ensure that the most complete record possible is made at this time, thus advancing the ultimate disposition of the issues herein.

III. Federal Defenses

In her pre-hearing memorandum (Doc. #15), Lewis identified three federal defenses which she contends prevent her from being compelled to disclose the requested information, to wit: the federal attorney-client privilege, the Code of Conduct for Federal Public Defender Employees and the oath of office she took when she became a federal public defender. In her post-argument memorandum (Doc. #20), Lewis has raised two additional federal defenses, to wit: the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment.[13] As a

_____

[13]In her post-argument memorandum, Lewis also relies upon the Fifth Amendment, arguing that compelling her to provide the requested information to the Grand Jury would violate Franks' right against self-incrimination. See Doc. #20 at 6-7. Assuming arguendo that Franks' Fifth Amendment rights survived her death, the Court concludes that Lewis' defense based upon the Fifth Amendment is without merit, since Fifth Amendment rights are personal and, therefore, an attorney cannot refuse to testify before a grand jury, on the grounds that her testimony

means of analysis, the Court will address the five defenses identified by Lewis in the above order, discussing together her contentions that the Code of Conduct for Federal Public Defender Employees and the oath of office she took when she became a federal public defender prohibit the State from compelling her to provide information she may have obtained from Franks concerning the disappearance of Erica Baker.

A.  Federal Attorney-Client Privilege

Lewis represented Franks while acting as a federal public defender.  During that representation, Franks may or may not have given her information concerning the disappearance of Erica Baker.  The State has been seeking to compel Lewis to disclose any such information she may have obtained from Franks.  Lewis argues that the federal attorney-client privilege is applicable to the efforts of the State to compel such disclosure, since she obtained the information while representing Franks in her capacity as a federal public defender.  The federal attorney-client privilege has been established in accordance with Rule 501 of the Federal Rules of Evidence, which provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person,

---

would violate her client's Fifth Amendment rights.  In re Grand Jury Subpoena, 144 F.3d 653 (10th Cir.), cert. denied, 525 U.S. 966 (1998).  See also, Fisher v. United States, 425 U.S. 391, 398 (1976) (noting that the Fifth Amendment right against self-incrimination "was never intended to permit [a person] to plead the fact that some third person might be incriminated by his testimony, even though he were the agent of such person … the Amendment is limited to a person who shall be compelled in any criminal case to be a witness against himself") (internal quotation marks and citation omitted, emphasis in the original).

> government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

In Swidler & Berlin v. United States, 524 U.S. 399 (1998), the United States Supreme Court addressed the question of whether the federal attorney-client privilege survives the client's death. That case arose out of a grand jury subpoena the Office of Independent Counsel had served upon an attorney, James Hamilton, to compel him to produce notes, which he had been made during his initial meeting with a client, Vincent Foster, Jr.[14] Shortly after that meeting, Foster committed suicide. The District Court refused to enforce the subpoena, concluding, inter alia, that the notes were protected by the attorney-client privilege. The District of Columbia Court of Appeals reversed, holding that the attorney-client privilege did not survive the death of the client in the criminal context, when the relative importance of the communications in a particular criminal prosecution was substantial. Upon further appeal, the Supreme Court reversed, holding that the federal attorney-client privilege, as "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience" (see Rule 501), survived the death of the client. Given that the Swidler & Berlin Court did not suggest therein that the surviving spouse possessed the authority to waive the attorney-client privilege of the deceased spouse and

---

[14]Foster was White House Counsel when he met with Hamilton.

there is no authority to so conclude,[15] this Court concludes that, if the <u>federal</u> (as opposed to Ohio) attorney-client privilege were applicable herein, Lewis could not be compelled to disclose information Franks may have given her concerning the disappearance of Erica Baker. Nevertheless, for reasons which follow, the Court concludes that the <u>Ohio</u>, rather than the <u>federal</u>, attorney-client privilege applies in this matter to the efforts of the State to obtain such information from Lewis.

As an initial matter, it is not questioned that the attorney-client privilege is an evidentiary privilege, rather than "a roving commission to police voluntary, out-of-court communications." <u>Wharton v. Calderon</u>, 127 F.3d 1201, 1205 (9th Cir. 1997). The Federal Rules of Evidence expressly limit their applicability to proceedings in federal courts. For instance, Rule 1101(a) sets forth the courts and judges to which the Federal Rules of Evidence apply:

> <u>(a) Courts and judges</u>. These rules apply to the United States district courts, the District Court of Guam, the District Court of the Virgin Islands, the District Court for the Northern Mariana Islands, the United States courts of appeals, the United States Claims Court, and to United States bankruptcy judges and United States magistrate judges, in the actions, cases, and proceedings and to the extent hereinafter set forth. The terms "judge" and "court" in these rules include United States bankruptcy judges and United States magistrate judges.

In addition, Rule 101 provides that the Federal Rules of Evidence govern proceedings in "the courts of the United States." That phrase is defined by 28 U.S.C. § 451, as "the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of

---

[15]Unlike this case, there was no indication in <u>Swidler & Berlin</u> that Foster's surviving spouse had waived his attorney-client privilege. Indeed, there is no authority to support the proposition that a surviving spouse has the authority to waive the federal attorney-client privilege.

International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior." Notably missing from Rules 1101(a) and 101 and § 451 is an indication that the Federal Rules of Evidence are ever applicable in state court proceedings, or that a public defender employed by the United States carries the federal attorney-client privilege on her back, in whatever court she may find herself, whenever she has obtained allegedly privileged information while acting in that capacity. Indeed, Lewis has failed to cite any instance in which a court has held for any reason that the federal attorney-client privilege is to be applied in state court.

Accordingly, the Court concludes that the Ohio attorney-client privilege is applicable to the efforts to compel Lewis to disclose the information in question and that, therefore, the federal attorney-client privilege does not prohibit the State from seeking to compel Lewis to provide such information in this civil contempt proceeding.[16]

B. Code of Conduct and Oath of Office

Canon 3(D) of the Code of Conduct of Federal Public Defender Employees provides that such an employee "should never disclose confidential

---

[16]One might argue, since the efforts to compel Lewis to disclose the information in question have moved from state to federal court, that this Court should now apply the federal version of the privilege, regardless of which version was to be applied in state court. This Court would reject such an argument. Rule 501 provides that the state law of privileges is applicable in civil proceedings when state law supplies the rule of decision. Since this is a civil contempt proceeding to compel Lewis to comply with a subpoena issued by the Montgomery County Grand Jury under Ohio law, Rule 501 mandates that this Court apply the Ohio attorney-client privilege, and state law on how that privilege is waived.

communications from a client, or any other confidential information received in the course of official duties, unless authorized by law" and that former such employees should observe the same restrictions on the disclosure of confidential information. Lewis argues that the word "law" in Canon 3(D) means the federal attorney-client privilege. This Court cannot agree. Simply stated, if the drafters of Canon 3(D) had intended the word "law" to mean only "the federal attorney-client privilege," there is simply no reason why they would not have used the longer phrase. On the contrary, the word "law" has a much broader meaning than "the federal attorney-client privilege." See e.g. Oxford English Dictionary (defining "law" as "a rule of conduct imposed by authority"). Once again, Canon 3(D) provides that a federal public defender employee "should never disclose confidential communications from a client, or any other confidential information received in the course of official duties, unless authorized by law." Giving the word "law" its natural, broad reading leads to the inescapable conclusion that it means a rule of conduct (such as the herein applicable Ohio attorney-client privilege, which, as authoritatively construed by the courts of Ohio, authorizes and compels Lewis under law to provide the requested information). Therefore, the Court rejects Lewis' assertion that the Code of Conduct of Federal Public Defender Employees requires that the federal attorney-client privilege, rather than Ohio law, apply to the efforts of the State to compel her to provide the requested information.

When she became a federal public defender, Lewis took an oath of office, under which she agreed to protect and defend the Constitution of the United States. Simply stated, Lewis has not cited any authority which would support the proposition that she will fail to protect and defend the Constitution, if she is

compelled to provide information concerning the disappearance of Erica Baker which she obtained from Franks, because the surviving spouse of her former client waived Franks' attorney-client privilege. Therefore, the oath of office taken by Lewis is not a defense which would prevent her from being compelled to provide the requested information.

C. Sixth Amendment

Lewis raises the Sixth Amendment right to counsel in her post-argument memorandum, arguing that this constitutional provision "guarantees the right of confidential attorney-client communications." Doc. #20 at 1. According to Lewis, the State would breach that constitutional guarantee, if it were permitted to compel her to disclose information that she learned from Franks during the attorney-client relationship.[17] For reasons which follow, the Court concludes that the Sixth Amendment does not prohibit the State from compelling Lewis to provide the requested information.

It bears emphasis that, with this federal defense, Lewis is relying upon Franks' right to counsel and the rights of others whose exercise might be chilled. In other words, Lewis has not argued that her right to counsel will be violated if she is compelled to disclose information that Franks may have given her about the

---

[17]With her defenses based upon the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment, Lewis argues not only that compelling her to disclose information she learned from Franks would violate her client's rights under those constitutional provisions, but also that it would chill others from exercising their rights to counsel under the Sixth Amendment, because they would be less likely to consult with counsel if a surviving spouse, executor or administrator decided to waive the attorney-client privilege that would otherwise prevent disclosure of their communications with counsel.

disappearance of Erica Baker.  Sixth Amendment rights, however, are personal.

Texas v. Cobb, 532 U.S. 162, 172 n. 2 (2001) ("The Sixth Amendment right to

counsel is personal to the defendant and specific to the offense."); United States v.

Sabatino, 943 F.2d 94, 96 n. 1 (1ˢᵗ Cir. 1991) (Sixth Amendment rights "are

personal in nature and cannot be asserted vicariously"); United States v. Fortna,

796 F.2d 724, 732 (5ᵗʰ Cir.) (holding that Sixth Amendment rights of a defendant

are personal and cannot be asserted by another), cert. denied, 479 U.S. 950

(1986).  This principle is exemplified by United States v. Jones, 44 F.3d 860 (10ᵗʰ

Cir. 1994), wherein the Tenth Circuit concluded that one defendant (Scott) did not

have the right to challenge the disqualification of attorneys representing two of his

co-defendants (Jones and Johnson), on the ground that the disqualification violated

the Sixth Amendment rights of his co-defendants.  The Tenth Circuit wrote:

> Although standing was not raised by either party, we may raise sua
> sponte the threshold issue of whether Mr. Scott has standing to bring such
> Sixth Amendment claims.  Alexander v. Anheuser-Busch Cos., 990 F.2d
> 536, 538 (10ᵗʰ Cir. 1993).  The Sixth Amendment right to counsel is a
> personal right.  United States v. Partin, 601 F.2d 1000, 1006 (9ᵗʰ Cir. 1979)
> (citing Faretta v. California, 422 U.S. 806 (1975)), cert. denied, 446 U.S.
> 964 (1980).  A defendant thus does not have standing to raise the Sixth
> Amendment claims of a co-defendant.  Partin, 601 F.2d at 1006; see also
> United States v. Adams, 1992 WL 279227, at *3 (10ᵗʰ Cir. Oct. 5, 1992).
> Neither Ms. Jones nor Ms. Johnson challenges the disqualifications on
> appeal.  Their co-defendant, Mr. Scott, may not vicariously assert their
> rights.  We therefore hold that Mr. Scott does not have standing to
> challenge the disqualification of the attorneys on grounds that the
> disqualification deprived his co-defendants of their right to counsel of choice.

Id. at 873.  Rather than her own personal right, Lewis is relying upon Franks' Sixth

Amendment right to counsel, as well as the rights of others who might be less

likely to consult counsel as a result of compelled disclosure and, thus, have the

exercise of their Sixth Amendment rights to counsel chilled.  This is something she

- 22 -

lacks standing to do. Therefore, that constitutional provision does not prevent the State from compelling Lewis to disclose the requested information.

However, assuming for sake of argument that Lewis may raise Franks' Sixth Amendment right to counsel as a defense to the efforts of the State to obtain information pertaining to the disappearance of Erica Baker, the Court concludes that, following the dictates of § 2317.02 (i.e., compelling Lewis to provide the requested information because the surviving spouse of her former client has waived the client's attorney-client privilege), will not violate Franks' Sixth Amendment right to counsel. Lewis has not cited any decision which has remotely suggested that Franks' Sixth Amendment right to counsel will be violated as a result of the waiver of her attorney-client privilege by her surviving spouse after her death. Moreover, the cases cited by Lewis do not support such a proposition. In Weatherford v. Bursey, 429 U.S. 545 (1977), Bursey brought an action under 42 U.S.C. § 1983, alleging that Weatherford, an undercover agent, had violated his (Bursey's) Sixth Amendment right to counsel, by participating in a meeting with his attorney. The two had been arrested together and the meeting had occurred at the behest of Bursey's counsel. The Supreme Court held that the Weatherford had not violated Bursey's Sixth Amendment right to counsel by participating in the meeting, because he had gone to the meeting at the request of Bursey's counsel rather than as a spy and, further, since he had not discussed the meeting with the prosecution. In Hoffa v. United States, 385 U.S. 293 (1966), Jimmy Hoffa, the former President of the International Brotherhood of Teamsters, and three other officials of that labor union were prosecuted and convicted for endeavoring to bribe members of the jury in an earlier prosecution of Hoffa, the "Test Fleet trial," which

had ended in a hung jury. To secure those convictions, the Government had relied heavily upon the testimony of Edward Partin, a Teamsters official who, during that trial, had frequently visited Nashville, the site of the Test Fleet trial, and, during those visits, was continually in the company of Hoffa and the other defendants in the subsequent jury bribery prosecution. After the convictions of Hoffa and the others had been affirmed by the Sixth Circuit, they appealed to the Supreme Court, arguing, inter alia, that Partin's testimony in the jury bribery trial should have been suppressed because Partin had invaded Hoffa's Sixth Amendment right to counsel by being present as a government agent during conversations by the attorneys representing Hoffa in the Test Fleet trial.[18] The Supreme Court rejected that argument, since counsel had been representing Hoffa in the Test Fleet trial, rather than in the jury bribery matter. As can be seen, neither of those decisions remotely suggests that the Ohio General Assembly has violated the Sixth Amendment, because it enacted a statute that permits an individual's surviving spouse, executor or administrator to waive her attorney-client privilege.

Accordingly, the Court concludes that compelling Lewis to disclose information she may have obtained from Franks concerning the disappearance of Erica Baker will not violate Franks' Sixth Amendment right to counsel, or the rights of others who might be less likely to consult counsel as a result of compelling such disclosure.

_____

[18]The Supreme Court found it unnecessary to address the question of whether the jury bribery trial defendants, other than Hoffa, had the right to raise Hoffa's Sixth Amendment rights, since it ultimately concluded that his rights had not been violated.

D.  Due Process

Lewis argues that compelling her to disclose information she obtained from Franks will deprive Franks of her due process right of access to courts, because it will chill the attorney-client relationship and, thus, discourage her (Franks) and others from utilizing an attorney and the courts.  One fatal flaw in this argument (other than the fact that Franks is deceased) is that Lewis may not assert the due process rights of her former client or anyone else.  See e.g., Kowalski v. Tessmer, 125 S.Ct. 564 (2004) (attorneys lacked standing to assert due process rights of clients who were denied appointment of appellate counsel after entering guilty pleas); Gabbert v. Conn, 526 U.S. 286, 292-93 (1999) (counsel cannot bring § 1983 claim predicated upon a denial of his client's right to due process which flowed from the arrest of the attorney while the client was testifying before a grand jury, since any such due process right was personal to the client); Lowry v. Barnhart, 329 F.3d 1019 (9th Cir. 2003) (noting that attorney cannot vicariously rely upon his client's due process right to an impartial decisionmaker). Consequently, the Court concludes that the alleged deprivation of Franks' due process rights and such rights of others who might be less likely to consult counsel as a result of Lewis being compelled to disclose the requested information does not serve as the basis for preventing the State from obtaining same.


In sum, even though the Court does not agree with Lewis' reasons for failing to raise her federal defenses in state court, it has assumed that she may raise those defenses at this point in her dispute with the State over whether she will be

required to provide the information she may have learned from Franks concerning the disappearance of Erica Baker. Further, based upon the foregoing, the Court concludes that none of Lewis' asserted federal defenses prevents the State from obtaining the requested information from her.[19]

The Court schedules a telephone conference call on Monday, May 2, 2005, at 8:30 a.m., for the purpose of selecting a date to conduct an evidentiary hearing on the question of whether Shane Franks gave his "express consent" to Lewis' providing information (see § 2317.02(A) (providing that attorney may testify with the "express consent" of the surviving spouse)) when he executed the second document, purporting to waive Franks' attorney-client privilege,[20] given that he had

_____

[19]Lewis contends that, in accordance with the Supremacy Clause, Art. VI of the United States Constitution, her federal defenses supersede § 2317.02(A). Although the Court agrees with Lewis' understanding of the Supremacy Clause, that constitutional provision is inapplicable herein, since her federal defenses are without merit.

Even though the Court has rejected the merits of Lewis' federal defenses, they were colorable and, thus, supported the removal of this matter under 28 U.S.C. § 1442(a). See Jefferson County, Ala. v. Acker, 527 U.S. 423, 431-32 (1999) (discussing requirement that federal defense be colorable to support removal under that statutory provision). Parenthetically, given that this Court has subject matter jurisdiction over this dispute, it would be improper to remand it to state court, merely because the Court has concluded that none of Lewis' federal defenses is viable.

[20]The question of whether Shane Franks has expressly consented to Lewis' providing the requested information must be decided regardless of whether she has waived her federal defenses, since that is an issue of state law, independent of those defenses. Whatever resolution is reached on the express consent issue, it will not be necessary to resolve the waiver matter. If Shane Franks did expressly consent, Lewis will be directed to provide the requested information to the Grand Jury; if he did not expressly consent to Lewis' providing information, Lewis will not be required to testify before the Grand Jury, regardless of whether she waived her non-viable federal defenses.

previously withdrawn his first such waiver, and, if so, whether that express consent was voluntarily given.[21]

April 22, 2005

/s/ Walter Herbert Rice

WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:

Counsel of record.

---

[21]The parties are free to file memoranda addressing the question of whether voluntariness is an element of express consent after the telephone conference call.